Michael S. Traylor, Esq. (SBN 136814)
Traylor Law Office PC
8601 Lincoln Blvd. 180
Suite 525
Los Angeles, CA. 90045
(310) 401-6610 telephone
(661) 480-1200 facsimile
traylorlawoffice@gmail.com   e-mail

**Attorney for Relator Plaintiff Roger Creighton**

**FILED**
Jan 03, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

# THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER CREIGHTON<br><br>Qui Tam Relator Plaintiff<br>on behalf of the United States<br><br>vs.<br><br>BELCAMPO GROUP, INC., BELCAMPO FARMS, LLC., ANYA FERNALD, TODD A. ROBINSON AND GARRY EMBLETON<br><br>Defendants | Case No.  2:22-cv-0009 TLN DMC<br><br>***QUI TAM* ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>FILED UNDER SEAL PURSUANT TO 31 U.S.C. §3730(B)(2)<br><br>1) VIOLATION OF THE FEDERAL FALSE CLAIMS ACT<br><br>DEMAND FOR JURY TRIAL<br><br>***PLEASE DO NOT PUT IN PRESS BOX***<br>***PLEASE DO NOT ENTER ON PACER*** |

1

COMES NOW, Relator Plaintiff, ROGER CREIGHTON (sometimes referred to herein as "Relator Plaintiff"), now alleging upon information and belief and filing this *qui tam* Complaint, as follows:

PARTIES, JURISDICTION AND VENUE

1. Relator Plaintiff Roger Creighton ("Relator Plaintiff") is a former employee of Defendant Belcampo Group, Inc. and its co-Defendants who was wrongfully and tortiously terminated by said Defendant after having complained and made attempts to cause Defendants to cease violating the False Claims Act and undertaking other unlawful conduct (sometimes identified herein as the "Unlawful Conduct") alleged herein.

2. The Defendants in this action are as follows:

    a) Belcampo Group, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business in Oakland, California.

    b) BelCampo Farms, LLC is a limited liability company organized and existing under the laws of the State of California with its principal place of business in Oakland, California.

    c) ANYA FERNALD is the co-founder, CEO, director and principal of each of the foregoing entities (collectively "BelCampo") and a supervisor of Relator Plaintiff during Relator Plaintiff's employment with BelCampo.

    d) TODD A. ROBINSON is the co-founder, CEO, director and principal of BelCampo.

    e) GARRY EMBLETON is the former CEO, director and principal of BelCampo and a supervisor of Relator Plaintiff during Relator Plaintiff's employment with BelCampo.

2

f) In addition to the foregoing, BelCampo (in its capacity and role as the former employer of Relator Plaintiff and as the perpetrator of all alleged activities hereunder) owns, operates, colludes with, uses, conspires with and manages a number of shell and sham entities which have a unity of interest with BelCampo and are used (and are being used) by BelCampo, its co-Defendants and others to avoid legitimate liabilities and obligations, fraudulently channel and hide assets and engage in other conduct which is unlawful and designed to avoid tax liabilities and debts/obligations. Such conduct is sufficiently deceptive to "pierce the corporate veil" of BelCampo and each of these entities, which include the following (each of which will be added as a party to this Complaint as a so-called "Doe Defendant"):

i) Belcampo California, LLC is a limited liability company organized under the laws of the State of California which purports to be a "member" of Defendant Belcampo Farms, LLC;

ii) Belcampo Basecamp, LLC is a suspended limited liability company organized under the laws of the State of California which is managed by Defendants Anya Fernald and Todd Robinson;

iii) Belcampo Butchery Land, LLC is a limited liability company organized under the laws of the State of California which is managed by Defendants Anya Fernald and Todd Robinson;

iv) Belcampo Butchery, LLC is a limited liability company organized under the laws of the State of California which is managed by Defendant Anya Fernald;

v) Belcampo Meat Company, LLC is a limited liability company organized under the laws of the State of California which is managed by Defendant Anya Fernald;

vi) Belcampo Property, LLC is a limited liability company organized under the laws of the State of California which is managed by Defendant Anya Fernald;

vii) Belcampo Retail Products, LLC is a limited liability company organized under the laws of the State of California which is managed by Defendant Anya Fernald; and

viii) Fabbrico Belcampo, LLC is a suspended limited liability company organized under the laws of the State of California which is managed by Defendant Anya Fernald .

3. a) Relator Plaintiff is ignorant of the true names and capacities of the above-referenced Doe Defendants and all such defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. Relator Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Relator Plaintiff are informed and believe and thereon allege that each of the fictitiously named defendants is actually responsible in some manner for the occurrences herein alleged, and each of Relator Plaintiff's injuries as herein alleged were actually and proximately caused by Defendants' actions and/or omissions.

b) Relator Plaintiff is informed and believes and thereon alleges that in connection with the acts and omissions alleged herein, each and all of the Defendants named herein, together with those unknown to Relator Plaintiff, entered into a partnership, employment, joint venture, and/or principal-agent relationship to carry our all of the acts and omissions herein alleged. At all times herein mentioned, each such Defendant has been and continues to be the employees, agents, partners, employers, principals, and/or joint venturers of each of their Co-Defendants, and in acting and omitting to act as alleged herein, acted and/or failed to dutifully act: (i) both on their own behalf and on behalf of their employees, agents, partners, employers, principals, and/or joint venturers; (ii) within the course and scope of and pursuant to Relator Plaintiff's employment, agency, joint venture and/or partnership; and (iii) with the authorization, direction, ratification, and adoption of their employers, principals, joint venturers, partners,

employees, and/or agents. Accordingly, each of them is jointly and severally liable and/or vicariously liable for the conduct of each of the others. Relator Plaintiff may seek leave of court to allege the exact nature of such interrelationships when the same are fully ascertained.

c) Relator Plaintiff further alleges that BelCampo and the foregoing Doe Defendants, and each of them, engaged in a civil conspiracy to violate numerous provisions of the False Claim Act and other federal laws as alleged herein and otherwise.  Said Defendants (and each of them) undertook efforts to conceal, cover-up and defraud the United States and consumers and otherwise prevent the citizens of the United States and the United States government from discovering and/or knowing about the Unlawful Conduct alleged herein. Each Defendant aided and abetted each of the others in furtherance of the civil conspiracy with actual, inquiry and constructive knowledge of the commission of each of the unlawful acts alleged herein. At the center of the conspiracy is a central team of decision-makers, officers, managers, members and senior executives of each whom acted in concert with each of the Defendants and each other in furtherance of the unlawful activity alleged herein.

d) Accordingly, Relator Plaintiff further alleges that those Defendants (including Doe Defendants) who purport to have limited liability due to their status as a partnership, corporation and/or limited liability company have lost such protection and should have their so-called "corporate veil" pierced due to the fact that they did not comply with the formal requirements necessary to maintain such veil of limited liability and acted as individuals and with a unity of interest and ownership between the purported entity and its owner(s) such that it would be unfair if the acts in question are treated as those of the purported entity alone.

4. Venue lies in the Eastern District of California in that BelCampo operates its businesses in Siskiyou County, State of California and takes advantages of resources, laws and benefits offered to companies who operate, conduct business and employ persons in Siskiyou County in the State of California. BelCampo maintained and continue to maintain records

relevant to such practices alleged herein in Siskiyou County within the State of California and within this judicial district.

**FACTS COMMON TO ALL CAUSES OF ACTION**

5. Relator Plaintiff was hired by BelCampo in in May 2020. Relator Plaintiff was a dedicated employee who immediately began making improvements to BelCampo's substandard inventory and fulfillment policies.  Shortly after he began his employment. Relator Plaintiff was promoted to Operations and Logistics Manager.

6. During Relator Plaintiff's employment, he discovered that approximately $3.5 million of the $4.8 million listed on the Balance Sheet did not physically exist. Relator Plaintiff reported this information internally and was instructed to stay silent.  Some weeks later he was granted permission to publish an inventory report that reflected true inventory quantities.  At the time, Relator Plaintiff was unaware of BelCampo's unlawful conduct as set forth more specifically herein.

7. In an effort to correct what Relator Plaintiff mistakenly perceived as ongoing errors (as opposed to intentional unlawful activity), Relator Plaintiff began distributing a weekly inventory report that listed the inventories by location and included YTD Production vs. YTD Sales figures. These reports reflected that the company was selling less than 50% of the production output.

8. BelCampo initially ignored the reports by Relator Plaintiff which showed massive discrepancies in inventory, sales, destroyed product, etc.  Subsequently, as such reports became more prevalent, BelCampo's executives began deleting detail and reports relative to inventories and accountings.

9. At all times, BelCampo claimed to be a company found "to create meat that's good for people, planet and animals".  BelCampo farms meat and maintains and FDA-approved

processing facility, full-service butcher shops, and restaurants.  Belcampo engages in every step of the meat processing and sales/distribution process.  BelCampo is required to comply with the applicable requirements of State and Federal Law which mandate the proper harvesting, preparation, processing, labeling, identification, storage, maintenance, monitoring, testing, quality control and distribution of meat products for human consumption (the "Services"). BelCampo violated both State and Federal laws at nearly every step of the rendering the Services, yet continued to distribute meat products to consumers. BelCampo's meat inventory which required cold storage was not properly maintained and BelCampo violated various local, state and federal health laws with respect to the labeling, processing and storage of BelCampo's meat inventory as well as the operation of its farms and butcheries. In addition, BelCampo falsely reported the source, conditions and other relevant details about the meat that BelCampo produced, sold, distributed and served to consumers and customers. For example,  BelCampo was only selling 40% of what it produced and amassing large amounts of spoilage and waste which were being mishandled and falsely reported internally and externally.  BelCampo withheld information which it is was required to disseminate regarding these matters and falsified and destroyed documents which evidenced the foregoing failures. Such improper rendition of the Services, unlawful activities, false statements, withholding of information required to be disclosed and related conduct which enhanced, condoned, ratified, covered-up and promoted the foregoing is collectively referred to herein as the "Unlawful Conduct".

10.  Relator Plaintiff brought the foregoing Unlawful Conduct to the attention of senior management and BelCampo's senior-most executives (e.g., Chief Executive Officer, Chief Financial Officer and President) at various times during his employment.  In response, BelCampo began to exclude Relator Plaintiff from key meetings which Relator Plaintiff previously attended and otherwise began withholding information from Relator Plaintiff which was essential to Relator Plaintiff's job function. Such action was taken in retaliation for Relator

Plaintiff bringing the above-referenced matters to BelCampo's attention and to conceal the Unlawful Conduct.

10. After the loss of some key personnel (including the Director of Butchery), Relator Plaintiff was asked to step in and become the plant manager. He was promised an increase in compensation which never came.

11. Relator Plaintiff continued distributing his weekly production report and updating the teams at All-Enterprise Meetings.

12. In retaliation for making reports illustrating same, Relator Plaintiff and his team were excluded from the All-Enterprise Meetings by BelCampo and its executives (including Anya Fernald, CEO).  Not only was this conduct retaliatory, but it impaired Relator Plaintiff's ability to perform his job tasks and fulfill his expanded role with the Company.  As a result of Relator Plaintiff's efforts, Defendants (and each of them) began making plans and attempts to have Relator Plaintiff forced out or terminated.

13. Relator Plaintiff worked on the 2021 budget and made significant improvements to the operational plans for the company. Relator Plaintiff met with the CFO to bring her up to speed on the pending issues and was thanked for his work. However, shortly thereafter, Relator Plaintiff emailed the CFO about the numerous problems with the inventory and waste.  As the issue became more pronounced, Relator Plaintiff was pushed out of the loop, ostracized and criticized. In fact, the CFO angrily contacted the new CEO and stated, "Who in the hell does [Relator Plaintiff] think he is".  The change in how Relator Plaintiff was being treated was obvious and the comment was reported back to Relator Plaintiff by other employees of BelCampo.

14. Relator Plaintiff was immediately blacklisted. He was excluded from meetings and information which was essential to his job was directed around him.  This conduct was in retaliation for Relator Plaintiff's reporting violations of policy, proper standards and applicable

regulations. The CFO's motivations were shared with others and then communicated to Relator Plaintiff. Obviously, this had a significant impact on Relator Plaintiff's day-to-day existence and Relator Plaintiff's work.

15. In an effort to either quiet Relator Plaintiff and/or force Relator Plaintiff to quit by not honoring the promise; BelCampo promised Relator Plaintiff that Relator Plaintiff would be permanently promoted and receive more money. These promises were never fulfilled. BelCampo also manipulated Relator Plaintiff into a shared-living arrangement with other employees at a property owned by BelCampo in an effort to monitor Relator Plaintiff.

16. As Relator Plaintiff continued to be falsely accused, ostracized, purportedly "investigated" and have Relator Plaintiff's work and career at BelCampo sabotaged; Relator Plaintiff became more and more concerned. Relator Plaintiff contacted then-CEO, Defendant Garry Embelton and disclosed all of the foregoing. Relator Plaintiff expressed his concern that Relator Plaintiff would lose the promised promotion and his then-current job. However, Defendant Embelton properly assured Relator Plaintiff that he was protected as a "whistleblower" and that he had "nothing to worry about". Relator Plaintiff went on to report other issues such as acts of drug use in the workplace. Defendant Embelton reassured Relator Plaintiff about his career, promotion and raise as well as that no further retaliation would occur.

17. Relator Plaintiff was chastised by BelCampo and other employees for approaching Defendant Embelton and stated that Defendant Embelton could not be trusted. Plainitff was then demoted. Thereafter, the company attorneys purportedly conducted an investigation into some of the events reported by Relator Plaintiff. Relator Plaintiff truthfully participated in the investigation, was demoted and was kicked-out of the BelCampo-owned residence where Relator Plaintiff had been residing. Relator Plaintiff was reprimanded on multiple occasions for conduct which was not attributable to Relator Plaintiff in retaliation for making the reports referenced above.

18. Relator Plaintiff took every effort to undo the false accusations against him and BelCampo's attempts to force him to quit. Relator Plaintiff was told to be silent and threatened that any further reports about BelCampo's unlawful conduct would result in the termination of Relator Plaintiff's employment.

19. Relator Plaintiff returned to attempts to contact Mr. Embelton for assistance as this was the very conduct that Mr. Embelton had assured would not occur. Mr. Embelton began refusing Relator Plaintiff's requests.

20. Prior to his termination, Relator Plaintiff had also became aware of carcass mold issues in the cooler and realized the issues were most prominent with the nonorganic beef. Relator Plaintiff informed BelCampo of the issue numerous times; including reporting the excess waste and excessive visually-detectable mold from the hanging carcasses. Defendants ignored this information; even after Relator Plaintiff reported same numerous times. In addition, Relator Plaintiff reported other violations of applicable law regarding the processing, storage, maintenance and labeling of meat products.

21. Relator Plaintiff made ongoing efforts to bring the company into compliance with regulations and industry standards. The efforts to force him out continued as his suggestions and concerns were ignored, rebuffed and the manner in which he was treated continued to decline.

22. Despite the ongoing efforts undertaken by BelCampo and its officers in retaliation for Relator Plaintiff's reports; Relator Plaintiff refused to quit his job. When all of these efforts failed, Relator Plaintiff was unlawfully terminated in January 2020. Defendant BelCampo accused Relator Plaintiff, primarily, of "gossiping" as a grounds for the termination. Defendant BelCampo also loosely suggested that Relator Plaintiff was responsible for some of the very Unlawful Conduct which Relator Plaintiff reported.

23. Defendants (and each of them) during Relator Plaintiff's employment, failed and refused to properly train, screen, conduct background checks, supervise, reprimand, direct and

instruct its senior management personnel in a manner at or above the standard of care and in accordance with Defendants' stated policies and the laws of the State of California as all of same relate to maintaining and promoting a work environment which is free of discrimination, harassment and retaliation.

24. Defendants (and each of them) where aware of all of the foregoing conduct (including the retaliation against Relator Plaintiff) and took no action. In fact, each Defendant participated in, supported and condoned such unlawful conduct. All of the foregoing conduct was openly and notoriously present in the work environment and were condoned and ratified by the Defendants' human resources officers and senior executives.

25. All of the foregoing occurred by design and with the full knowledge of all Defendants. When such conduct was brought to the attention of all Defendants, they failed and refused to take any corrective action and continued in their course of retaliation.

26. Each Defendant intentionally (and in some instances in a grossly negligent capricious and indifferent manner), wrongfully, maliciously, knowingly and willingly allowed all of the foregoing to regularly occur and failed and refused to intervene, cease and desist and/or take any reasonable efforts to eliminate or minimize such ongoing conditions or the damages that such conditions caused. Furthermore, each and all Defendants acted in concert, conspired, encouraged and cooperated with each other, condoned, supported, implemented and furthered such conduct with the intent to deprive Relator Plaintiff of Relator Plaintiff' rights, to cause Relator Plaintiff injury and to force Relator Plaintiff to abandon Relator Plaintiff's complaints and/or terminate Relator Plaintiff's employment. Said conduct was implemented by the managers and officers of the Defendants on behalf and in furtherance of the directives, desires and benefit of the Defendants, and each of them.

27. In addition to all of the foregoing, Defendants also engaged in numerous violations of the False Claims Act and other federal laws by engaging in the following conduct (the "Unlawful Conduct"):

a) mislabeling meat that was not "organic" as "organic";

b) falsely identifying the sources and methods of how animals were raised, fed, treated, sustained, butchered, etc.;

c) falsely identifying the origin and source of meat products sold to grocery stores, restaurants and consumers;

d) falsely identifying the location of the animals from which Defendants' meat was sourced;

e) falsely reporting the quantity and extent of meat that was spoiled, wasted and destroyed;

f) passing off meat products as their own and making false statements about the nature of such meat products

g) charging customers and consumers higher rates for products which were passed-off as having more value than Defendants knew were accurate;

h) falsely claiming that meat products were "locally sourced" and/or imported from other places;

i) falsely reporting the processes and quality control standards applicable to meat products sourced and sold by Defendants;

j) creating false sales, inventory and waste reports in connection with the foregoing;

k) processing, storing, labeling and distributing meat products in violation of 21 USC Sections 607 and 610.

l) other similar conduct in violation of state and federal laws (as well as below industry standards and Defendants' stated policies, practices and representations).

28. Defendants and each of them engaged in the foregoing conduct and all of the Unlawful Conduct knowingly, intelligently and intentionally and took efforts to conceal such conduct with malice. Defendants and each of them failed and refused to report the foregoing conduct to the United States and the State of California, despite Defendants' obligations to do so. Furthermore, in an effort to conceal the foregoing conduct and all of the Unlawful Conduct, Defendants submitted false reports, claims, invoices and filings (and made other false statements) to the United States and the State of California.  Such efforts were undertaken with actual knowledge, deliberate ignorance of the truth, falsity and withholding/concealment of the applicable information, and with reckless disregard of the truth or falsity of the applicable information.

## I. FIRST CAUSE OF ACTION BY RELATOR PLAINTIFF

## AGAINST DEFENDANT BELCAMPO

## FOR VIOLATION OF THE FALSE CLAIMS ACT

29. Relator Plaintiff realleges and incorporates herein by this reference Paragraphs 1-28 above as though set forth fully here.

30.  The False Claims Act (FCA), 31 U.S.C. §§ 3729 - 3733 was enacted in 1863 by Congress. §§ 3729(a)(1)(A) and (B) set forth FCA liability for any person who knowingly submits a false claim to the government or causes another to submit a false claim to the government or knowingly makes a false record or statement to get a false claim paid by the government. Section 3729(a)(1)(G) is known as the reverse false claims section; it provides liability where one acts improperly – not to get money from the government, but to avoid having

to pay money to the government. Section 3729(a)(1)(C) creates liability for those who conspire to violate the FCA.

31. Defendants and each of them have jointly and severally violated and conspired to violate the Federal Meat Inspection Act and other federal laws under the purview of the U. S. Department of Agriculture by engaging in each act (and multiple acts) of the aforementioned Unlawful Conduct and both (a) submitting false and/or fraudulent records, statements and claims made to the United States Department of Agriculture and other governmental authorities and (b) submitting false and/or fraudulent records, statements and claims in an effort to conceal such Unlawful Conduct.

32. Defendants and each of them have jointly and severally violated and conspired to violate the FCA by engaging in each act (and multiple acts) of the aforementioned Unlawful Conduct and both (a) submitting false and/or fraudulent records, statements and claims made to the United States Department of Agriculture and other governmental authorities and (b) submitting false and/or fraudulent records, statements and claims in an effort to conceal such Unlawful Conduct.

33. Defendants and each of them engaged in the foregoing conduct and all of the Unlawful Conduct knowingly, intelligently and intentionally and took efforts to conceal such conduct with malice. Defendants and each of them failed and refused to report the foregoing conduct to the United States and the State of California, despite Defendants' obligations to do so. Furthermore, in an effort to conceal the foregoing conduct and all of the Unlawful Conduct, Defendants submitted false reports, claims, invoices and filings (and made other false statements) to the United States and the State of California. Such efforts were undertaken with actual knowledge, deliberate ignorance of the truth, falsity and withholding/concealment of the applicable information, and with reckless disregard of the truth or falsity of the applicable information.

34. Defendants have engaged in other acts which violate the FCA and which are known by Defendants and the United States Department of Food and Agriculture, for which Relator Plaintiff cannot yet identify; however Relator Plaintiff will seek leave to amend this complaint to allege such additional violations and false claims. Defendants derived financial benefits and goodwill from Defendants' Unlawful Conduct and deception of the people, citizens, residents and governments of the United States of America and the State of California (the "Represented Parties").

35. As a direct, foreseeable, legal, actual and proximate result of the Defendants' conduct alleged hereinabove the Represented Parties have been harmed and damaged in an amount to be proven at trial.

36. Defendants, their senior executives, managing agents, managers, directors and officers committed the acts described in this cause of action intentionally, willfully, oppressively, fraudulently and maliciously for the purpose of injuring the Represented Parties and depriving the Represented Parties of their rights.  . The Unlawful Conduct and the Retaliatory Conduct herein undertaken by Defendants was extremely reckless and capricious and subjected the Represented Parties to unlawful and unjust hardships. The recklessness was despicable and done in conscious disregard of the fundamental rights of the Represented Parties. Furthermore, such conduct on the part of Defendants and those persons was intentional, oppressive, fraudulent, malicious and done in a wanton effort to deprive the Represented Parties of their fundamental rights. Defendants and those persons intended to cause injury to the Represented Parties and engaged in conduct with a willful and conscious disregard of the Represented Parties' fundamental rights. Accordingly, Relator Plaintiff also seeks any allowable and/or appropriate punitive or exemplary damages which may be or become available against Defendants in an amount appropriate to punish and make an example of them in addition to the other damages sought herein, subject to applicable law.

**PRAYER FOR RELIEF**

WHEREFORE , Relator Plaintiff prays judgment against Defendants as follows:

1. For general and special damages according to proof;

2. For special damages according to proof;

3. For interest, according to law, on the amount to be ascertained at trial from the applicable date upon which that interest begins to accrue according to law and as proved at trial;

4. For any and all costs and attorneys' fees as provided by law;

5. For allowable and applicable punitive damages in an amount sufficient to deter Defendants from engaging in such conduct again in the future;

6. For injunctive relief prohibited Defendants from continuing in the Unlawful Conduct; and

7. For any other and further relief according to proof, any applicable law and/or that the Court considers proper.

**DEMAND FOR JURY TRIAL**

Relator Plaintiff hereby demand a trial by jury of the foregoing causes of action.

DATED: January 3, 2022                                  Respectfully Submitted

*Michael S. Traylor*
Michael S. Traylor, Esq.
Attorney for Relator Plaintiff Roger Creighton